Julia M. Jayne, State Bar No. 202753
Jayne Law Group, P.C.
803 Hearst Ave.
Berkeley, CA 94710
Telephone: 415-623-3600
Facsimile: 415-623-3605
julia@jaynelawgroup.com

Attorneys for Defendant
OZYMANDIAS TROY WATSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>OZYMANDIAS TROY WATSON,<br>Defendant. | CASE NO. CR-25-00016 HSG<br>**OZYMANDIAS WATSON'S SENTENCING MEMORANDUM**<br>Date: September 9, 2026<br>Time: 2:00p.m.<br>Judge: Hon. Haywood S. Gilliam Jr. |

Defendant Ozymandias Troy Watson, through his counsel, Julia M. Jayne, respectfully submits this Memorandum in aid of his upcoming sentencing.

## I. INTRODUCTION

Ozymandias Watson is twenty-two years old. The conduct that brings him before this Court occurred in July 2022, when he was eighteen years old, suffering from severe opioid use disorder, and using one to two grams of fentanyl a day. Presentence Report ("PSR") ¶ 68. He was not a trafficker building a business. He was an opioid-dependent teenager selling pills to support a habit that had taken over his life.

That dependence didn't begin on the streets. At fifteen, Mr. Watson was hospitalized for six weeks following a biopsy related to hemophilia, a genetic bleeding disorder. PSR ¶ 63. He was prescribed opioids during that hospitalization, became physically and psychologically dependent on them, and experienced withdrawal when he was discharged. PSR ¶ 69. He then sought out other drugs on the streets. *Id*. By 2022, fentanyl was both his drug of choice and, in his own words to Probation, the drug that caused him the most problems. PSR ¶ 70.

The four years since the conduct demonstrate why incarceration is unnecessary. Since February 2023, Mr. Watson has completed a ninety-day residential program at New Bridge Foundation, intensive outpatient treatment, and aftercare in which he continues to participate weekly; he receives methadone treatment and drug counseling; he attends twelve-step meetings; and his urinalysis testing has been negative for over three years, verified through Pretrial Services. PSR ¶ 72. He works full time at Amazon and supplements that income with delivery work. PSR ¶ 77. He is enrolled at City College of San Francisco. PSR ¶ 74. He has completed this district's Restorative Justice Program. Pretrial Services has reported that he has shown steady and commendable progress in all areas of his supervision. *Id.*

Most significantly, Mr. Watson has successfully completed the Leading Emerging Adults to Develop Success (LEADS) program. Under the Plea Agreement, the parties agreed that if Mr. Watson successfully completed LEADS, "an appropriate disposition of this case under the Sentencing Guidelines and 18 U.S.C. § 3553(a) is a non-custodial sentence," and the government agreed that it "will recommend a non-custodial sentence" upon successful completion. Plea Agreement ¶¶ 7, 16; see also PSR ¶ 5.

Mr. Watson accordingly requests that this Court impose a non-custodial sentence of one year of

probation. By the sentencing date, he will have spent approximately three and a half years under close federal supervision. That record—sustained sobriety, treatment, employment, education, stable housing, and completion of LEADS—shows that an additional year is sufficient to confirm his stability without disrupting the recovery that supervision was designed to produce.

**INDIVIDUAL BEFORE THIS COURT**

**A. Personal Background**

Mr. Watson was born on March 15, 2004, in Wellington, New Zealand. PSR ¶ 51. He is a naturalized United States citizen. PSR at 2. His father is a tech executive in Alamo, California; his mother was a homemaker. PSR ¶ 51. He has four younger siblings, all students living in Alamo. *Id.*

The family moved from New Zealand to California when Mr. Watson was eight. PSR ¶¶ 52-53. He recalled the move as an exciting event rather than a disruptive one, had no trouble assimilating, and was raised in a supportive and privileged environment in which his basic and emotional needs were met. PSR ¶ 53. He had friends, did well in school, and was generally thriving in California.

Quite a bit changed when Mr. Watson was thirteen or fourteen. His mother's bipolar disorder and alcohol use disorder produced erratic behavior during manic episodes, and he frequently saw her severely intoxicated. PSR ¶ 54. Her condition fluctuated between stable and unstable. PSR ¶ 55. When she was intoxicated to a severe degree, Mr. Watson made her food, fed her, and washed her. *Id.* At times she wasn't able to care for him or his siblings. *Id*.

His parents' marriage deteriorated over her addiction, and they divorced when he was eighteen. PSR ¶ 56. Tragically, Mr. Watson's mother passed away last year on September 8, 2025. PSR ¶ 57. Up to that point, he had remained close to her and regularly confided in her. *Id.* Her death was unexpected and a huge loss to Mr. Watson. He was able to attend her funeral in Houston and later returned to collect her belongings. Notably, during this time of grieving and emotional difficulty, he maintained his sobriety.

As for Mr. Watson, his own dependence began just a few years after his mother's condition became apparent to him as a teenager. His drug dependence and withdrawal followed the six-week hospitalization at fifteen years old and the prescribed opioids. PSR ¶¶ 63 and 69.

His family knows about this case and supports him. PSR ¶ 59. They are present to talk things over, provide advice and moral support, and spend time with him; they are honest with him about what

he needs to hear rather than judgmental about his past. *Id*. He communicates with them, typically daily. *Id*. His father was present at his change of plea. That support matters at sentencing. See *United States v. Scott*, 239 F. Supp. 3d 629, 635 (E.D.N.Y. 2017) (noting family support reduces recidivism).

**B. The Offense Conduct**

Mr. Watson pled guilty on March 19, 2025, to Count One of the Information, charging possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). PSR ¶ 4; Plea Agreement ¶ 1. He admitted the facts underlying that count. Plea Agreement ¶ 2.

In sum, on July 6, 2022, Mr. Watson supplied his friend, Jianna Coppedge, with several M30 pills. She owed him money from prior supplies. He sold her the pills and was aware she might then distribute those pills to others.[1]

On July 13, 2022, law enforcement contacted Mr. Watson and searched his residence and found approximately 110 M30 blue tablets totaling 11.3 grams of fentanyl, 18.62 grams of fentanyl powder for personal use, a digital scale, and approximately twenty-five translucent medication packaging capsules. PSR ¶ 19; Plea Agreement ¶ 2. He admitted that he possessed most of the M30 pills with the intent to distribute them. PSR ¶ 19.

At the time of the search, Mr. Watson was using approximately one to two grams of fentanyl per day. PSR ¶ 68. The quantity he possessed for distribution was the 11.3 grams contained in the M30 tablets and that quantity governs the Guidelines calculation.

**C. Compliance Record and Future Goals**

Mr. Watson has been under federal supervision since March 10, 2023, when he was released on a $50,000 unsecured bond and placed at New Bridge Foundation for a ninety-day residential drug treatment program. PSR ¶ 6. Three and a half years of documented conduct now inform this Court's sentencing decision.

His treatment record is extensive and verified. Since February 2023 he has completed the New Bridge Foundation ninety-day residential program, New Bridge intensive outpatient treatment, and New Bridge aftercare, in which he continues to participate weekly. PSR ¶ 72. He participates in methadone

[1] It turned out that she sold the pills to a young man who overdosed. Mr. Watson did not know him and was not a party to his communications with Ms. Coppedge.

treatment and drug counseling and attends twelve-step meetings. *Id*. He completed a substance use assessment, a relapse prevention plan, a mental health assessment, all assigned CTC journals, and four cognitive-behavioral model interventions demonstrating his understanding of the concepts. PSR ¶ 8. In an August 2025 comprehensive evaluation, the HOPE Program recorded his confidence in resisting substance use across pleasant and unpleasant emotions, physical discomfort, social pressure, urges and temptations, and interpersonal conflict, and recorded treatment goals of maintaining sobriety, developing healthy coping strategies to increase emotional regulation, and improving his social network to include more prosocial and supportive friends. PSR ¶ 73.

Every urinalysis test since his June 27, 2023 setback has been negative for illicit substances, verified through Pretrial Services. PSR ¶¶ 8, 72. An early relapse three months into treatment for severe opioid use disorder, followed by more than three years of verified sobriety, is what successful treatment of that disorder ordinarily looks like.

His compliance record likewise improved and then held. By November 4, 2025, Pretrial Services reported that Mr. Watson "had shown steady and commendable progress in all areas of his supervision." *Id.* Probation's current assessment is that he is complying with all Court-ordered conditions of release. *Id.* Further, he has now met all the milestones of his personalized LEADS program.

He has also built the ordinary structures that make relapses and reoffending less likely. He has been employed full time as a fulfillment associate at Amazon since June 2023, earning $25 per hour, and works as a freelance delivery driver for DoorDash and Instacart to supplement his income. PSR ¶ 77. He has been enrolled at City College of San Francisco since June 2025, studying political science. PSR ¶ 74. He has stable housing in his own apartment in San Francisco. PSR ¶¶ 8, 52. He completed the Northern District of California Restorative Justice Program. He intends to continue all of these positive milestones.

His goals are modest and concrete. He told Probation that his primary goal is to be happy and to have a stable life, that he has gotten further in his recovery than he had imagined, and that he does not feel defined by his addiction. PSR ¶ 61. He hopes to complete school and find a career with better pay and working conditions. *Id.* He identified his own risk, the stress of full-time employment combined with school, and expressed confidence that he can remain stable and grounded through difficulty. *Id.*

Finally, his statements to Probation reflect accountability rather than minimization. He wrote that

he "fully accept[s] responsibility for committing my offense," described distributing and possessing with intent to distribute fentanyl pills to a person he knew to be an addict, and explained that he did so primarily to support the costs of his own drug use because he was then "so deeply mired in opioid addiction that procuring more drugs outweighed all else in importance." PSR ¶ 24. He said he feels ashamed that he reached a point of engaging in behavior dangerous to himself and others. PSR ¶ 25.

He respectfully asks the Court to take his commitment to sobriety and his progress into account in imposing a sentence that allows him to live independently after one year of supervision.

## II. LEGAL STANDARD

A sentencing court must impose a sentence that takes account of the factors enumerated in 18 U.S.C. § 3553(a). In particular, a court must fashion a sentence that is "sufficient, but not greater than necessary," to serve the purposes of sentencing set forth in the statute. 18 U.S.C. § 3553(a)(2); *see Kimbrough v. United States*, 522 U.S. 85, 111 (2007). As the Supreme Court explained, "[t]he overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (citing 18 U.S.C. § 3553(a)).

The Sentencing Guidelines are just one factor among many a court must consider at sentencing, *United States v. Ressam*, 593 F.3d 1095, 1117-18 (9th Cir. 2010), and the Court "may not presume that the Guidelines range is reasonable." *Carty*, 520 F.3d at 991. The Court must make an individualized assessment and fashion a sentence that reflects the particulars of the offense and the unique characteristics of the offender. *Ressam*, 593 F.3d at 1117-18.

In undertaking this analysis, this Court must examine the factors unique to the defendant—namely, his prior achievements, hard work (here, employment and sobriety), and commitment to family obligations (he maintains strong family connections) —as those factors are highly relevant to determining whether a particular sentence is reasonable and not greater than necessary. *See, e.g., United States v. Ruff,* 535 F.3d 999, 1001, 1003 (9th Cir. 2008) (history of strong employment, family support).

Applying these principles in this case, we respectfully urge the Court to impose a sentence of 12

months of probation.

## III. ANALYSIS PURSUANT TO SECTION 3553(a) AND SENTENCING RECOMMENDATION

Mr. Watson understands that he must be held accountable for his conduct. He does not dispute that he possessed fentanyl with the intent to distribute it, or that fentanyl distribution causes grave harm. The question before the Court is what sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a). The following considerations support the defendant's proposed sentence.

### A. Mr. Watson's Successful Completion of the LEADS Program Warrants the Non-Custodial Sentence the Parties Agreed Upon

This case was resolved on a specific premise. Mr. Watson agreed to participate in the LEADS program under the terms of the LEADS Program Contract for Participation attached to his Plea Agreement as Exhibit A. Plea Agreement ¶ 7. In exchange, the parties agreed that "[i]f I successfully complete the LEADS program, the parties agree that an appropriate disposition of this case under the Sentencing Guidelines and 18 U.S.C. § 3553(a) is a non-custodial sentence." *Id*. The government made the corresponding promise: "if the defendant successfully completes the LEADS program, the government will recommend a non-custodial sentence." Plea Agreement ¶ 16. Probation's summary of the agreement records the same understanding. PSR ¶ 5. The Probation Officer supports a non-custodial sentence.

Mr. Watson asks that the Court concur and issue a non-custodial sentence.

### B. The Section 3553(a) Factors Independently Support a Non-Custodial Sentence

The nature and circumstances of the offense are serious, but they are inseparable from Mr. Watson's age and severe opioid dependence at the time. He was eighteen and sold pills primarily to sustain near-constant fentanyl use. PSR ¶¶ 24, 45-46, 65, 68. His youth does not excuse the conduct; it helps explain why the person before the Court today is materially different from the teenager who committed it.

The need for deterrence and protection of the public is also addressed by demonstrated conduct, not prediction alone. After one early relapse in June 2023, every urinalysis test has been negative for illicit substances. PSR ¶¶ 7, 72. He has complied with release conditions, completed extensive treatment

and LEADS requirements, maintained full-time employment and stable housing, and returned to school. PSR ¶¶ 8, 72, 74, 77. That sustained performance under supervision is concrete evidence that continued recovery—not incarceration—is the soundest means of reducing risk. Moreover, Mr. Watson will still have to carry this felony into the future, as a constant reminder of how far he fell. He understands that burden and has been preparing to continue his education and employment in spite of it.

Finally, custody would interrupt the very treatment and stabilizing routines that § 3553(a)(2)(D) directs the Court to consider. Mr. Watson remains in methadone treatment, counseling, aftercare, and twelve-step programming. PSR ¶¶ 64, 66, 72. A one-year probationary sentence preserves those supports, holds him accountable, and fulfills the parties' LEADS bargain without imposing punishment greater than necessary.

**C. One Year of Probation is Sufficient After Three and a Half Years of Federal Supervision**

Mr. Watson has already served the functional equivalent of a lengthy probation term. He was released into pretrial supervision on March 10, 2023, and he has remained under that strictly and regularly monitored supervision, and in the LEADS program, continuously since (PSR ¶¶ 6-7); by the September 9, 2026 sentencing date, that is roughly three and a half years of closely scrutinized release. Those years effectively substitute for what a longer probation term would do. Indeed, the LEADS program was far more involved than any typical term of probation or supervision would be.

Section 3553(a) authorizes only a sentence that is "sufficient, but not greater than necessary," and that limit applies to the duration of supervision as well as to custody. 18 U.S.C. § 3553(a). One additional year of probation will provide a measured transition from the intensive structure of LEADS while allowing Mr. Watson to continue treatment, work, and school. A longer term would add little deterrent or protective value and would exceed what his demonstrated progress requires.

The Probation Officer recommends a sentence of credit for time served. Mr. Watson respectfully requests one year of probation instead, rather than "credit for time served." The distinction is consequential. A sentence of time served is a sentence of imprisonment, whereas probation is a distinct, non-custodial sentence. See 18 U.S.C. § 3561(a)(3). And because Mr. Watson was convicted under 21 U.S.C. § 841(b)(1)(C), any sentence that imposes a term of imprisonment must also impose at least three years of supervised release. 21 U.S.C. § 841(b)(1)(C). Thus, adopting the time-served recommendation

would limit the Court's discretion in imposing a term of supervision most appropriate to Mr. Watson as he appears presently before the Court, taking into consideration all of his progress.

Instead, a one-year term of probation is both authorized and appropriately tailored. Section 3561(c)(1) authorizes a felony probation term of one to five years, and U.S.S.G. § 5B1.2(a)(1) likewise recognizes a one-year minimum term of probation. One year gives the Court a meaningful period in which to confirm Mr. Watson's continued stability while accounting for the approximately three and a half years he has already spent under federal supervision.

Section 3563(a)(2) requires a felony probation sentence to include a condition of restitution, a fine, or community service unless extraordinary circumstances make such a condition plainly unreasonable. Mr. Watson has already completed this District's Restorative Justice Program and has performed the substantial reflective and community-centered work that program required. He respectfully asks the Court to treat that completed restorative-justice work as satisfying the community-service component of § 3563(a)(2) if the Court does not otherwise find extraordinary circumstances. If the Court concludes that additional community service should be imposed during the probationary term, Mr. Watson will complete whatever additional service the Court directs.

**CONCLUSION**

Mr. Watson does not ask the Court to overlook what he did. He sold fentanyl pills to another young person struggling with addiction, and he has said in his own words that he cannot escape the thought that his conduct may have pushed others further down a path he barely survived himself. PSR ¶ 26. He was eighteen, dependent on opioids that a hospital first put in his hands, and he chose badly and repeatedly. What he asks the Court to credit is what he has done in the four years since: he got sober and stayed sober, he went to work, he went back to school, he sat with the harm he caused in this District's Restorative Justice Program, and he completed the LEADS program that this case was structured around.

Mr. Watson respectfully asks this Court to impose a non-custodial sentence. He further asks the Court to impose no more than one year of probation for the reasons described herein.

Dated: August 31, 2026

Respectfully submitted,

/s/__________________
Julia Jayne
Attorneys for Ozymandias Watson